# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| WILLIAM CALLAWAY, Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>MARATHON OIL COMPANY | CASE NO: 5:20-cv-00863 |

## COLLECTIVE ACTION COMPLAINT

1. Plaintiff William Callaway brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") against Defendant Marathon Oil Company (Marathon).

2. Callaway and the other workers like him ("Putative Class Members") regularly worked for Marathon in excess of 40 hours each week.

3. These workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead, these workers were paid a day rate. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### JURISDICTION AND VENUE

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District and Division. Callaway performed work for Marathon throughout Karnes County.

## THE PARTIES

7. Callaway has performed work for Marathon as an inspector from approximately April 2015 through April 2018.

8. Throughout his time with Marathon, he was paid a day-rate with no overtime compensation.

9. His consent to be a party plaintiff is attached as Exhibit A.

10. Callaway brings this action on behalf of himself and all other similarly situated workers paid through Marathon's day-rate system.

11. Each of these workers received a flat amount for each day worked, without overtime pay.

12. The class of similarly situated workers ("Putative Class Members") consists of:

**Current and former inspectors working for, or on behalf of, Marathon Oil Company and paid a day-rate without overtime during the past three years.** (the Putative Class Members).

13. Marathon is a corporation doing business throughout the United States. Marathon may be served by serving its registered agent for service of process: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## COVERAGE UNDER THE FLSA

14. For at least the past three years, Marathon has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. For at least the past three years, Marathon has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. For at least the past three years, Marathon has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce

or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

17. For at least the past three years, Callaway and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

18. Marathon is a private oil and gas company headquartered in Houston "focused on the most significant oil-rich resource plays in the U.S. -- the Eagle Ford in Texas, the Bakken in North Dakota, the STACK and SCOOP in Oklahoma, and the Permian in New Mexico."[1]

19. To continue operating, Marathon relies on inspectors.

20. While exact job titles and job duties may differ, these inspectors are subjected to the same or similar illegal pay practices for similar work.

21. Specifically, Marathon paid these workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

22. For example, Callaway worked for Marathon from April 2015 through April 2018 as an inspector.

23. As an inspector, Callaway's primary job duties included inspecting the wells and oil and gas pipelines, utilities, and the coating on pipelines, storage facilities, and other construction and production projects as needed.

24. Callaway did not have any supervisory duties.

---

[1] https://www.marathonoil.com/about/ (last visited February 19, 2020).

25. Callaway did not hire for fire employees.

26. Callaway did not exercise discretion and judgment as to matters of significance.

27. To the contrary, Callaway worked with his hands.

28. Callaway performed manual labor.

29. Callaway worked in dangerous conditions.

30. Callaway did not work in an office.

31. Callaway did not manage a business unit.

32. Callaway could not make decisions as to matters of significance that would impact overall business operations.

33. Callaway's decisions were limited to routine and manual tasks surrounding inspections for Marathon.

34. Callaway was heavily supervised by Marathon.

35. Callaway was required to follow Marathon policies and procedures.

36. Callaway reported to Marathon on a regular basis.

37. Marathon determined the pay practice through which Callaway is compensated.

38. Marathon did not guarantee Callaway a salary.

39. Marathon did not provide Callaway overtime pay.

40. Marathon employed Callaway for purposes of the FLSA.

41. Marathon set Callaway's schedule.

42. Marathon required Callaway to work over 40 hours in a week.

43. Marathon typically scheduled Callaway to work 10-hour minimum shifts, for as many as 5-6 days a week.

44. Marathon keeps accurate records of the hours, or at least days, of Callaway's work.

45. Marathon required Callaway to report his time to it.

46. Marathon required Callaway to report his expenses to it.

47. Marathon approved Callaway's time worked.

48. Callaway's work was production based.

49. Callaway's work was integral to the operation of Marathon's pipelines and crude transportation.

50. Callaway was prohibited from deviating from Marathon's quality standards.

51. Callaway is a blue-collar worker.

52. Callaway is not exempt under any white-collar exemption.

53. Callaway was not guaranteed a salary.

54. Marathon cannot demonstrate that Callaway was paid on a salary basis in accordance with the FLSA.

55. Marathon cannot demonstrate that Callaway was not its employee for purposes of the FLSA.

**FLSA VIOLATIONS**

56. Callaway incorporates the preceding paragraphs by reference.

57. As set forth herein, Marathon violated the FLSA by failing to pay Callaway and the Putative Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

58. At all relevant times, Marathon has been an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

59. Marathon employed Callaway and each member of the Putative Class.

60. Marathon's pay policy denied Callaway and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

61. Marathon owes Callaway and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

62. Marathon knew, or showed reckless disregard for whether, its failure to pay overtime violated the FLSA. Its failure to pay overtime to Callaway and the Putative Class is willful.

63. Due to Marathon's FLSA violations, Callaway and the Putative Class Members are entitled to recover from Marathon for their unpaid overtime compensation, liquidated damages, treble damages, reasonable attorney fees, costs, and expenses of this action.

64. The improper pay practices at issue were part of a continuing course of conduct, entitling Callaway and Putative Class Members to recover for all such violations, regardless of the date they occurred.

## COLLECTIVE ACTION ALLEGATIONS

65. The Putative Class Members were subject to the same working conditions as Callaway.

66. All facts alleged as to Callaway are hereby alleged to the Putative Class Members.

67. The Putative Class Members are similarly situated based on Marathon's common pay policy.

68. The Putative Class Members are similarly situated based on Marathon's common practices applied to all Putative Class Members.

69. The Putative Class Members are similarly situated because Marathon's plan regarding the use and pay of Putative Class Members is similar.

70. The Putative Class Members' primary job duties included inspecting oil and gas pipelines, storage facilities, and other construction and production projects as needed.

71. Putative Class Members did not have any supervisory duties.

72. Putative Class Members did not hire for fire employees.

73. Putative Class Members did not exercise discretion and judgment as to matters of significant.

74. To the contrary, Putative Class Members worked with their hands.

75. Putative Class Members performed manual labor.

76. Putative Class Members worked in dangerous conditions.

77. Putative Class Members do not work in an office.

78. Putative Class Members do not manage a business unit.

79. Putative Class Members cannot make decisions as to matters of significance that would impact overall business operations.

80. Putative Class Members' decisions are limited to routine and manual tasks surrounding inspections for Marathon.

81. Putative Class Members are heavily supervised by Marathon.

82. Putative Class Members are required to follow Marathon policies and procedures.

83. Putative Class Members report to Marathon on a regular basis.

84. Marathon determined the pay practice through which all Putative Class Members are compensated.

85. Marathon did not guarantee the Putative Class Members a salary.

86. Marathon did not provide the Putative Class Members overtime pay.

87. Marathon employed the Putative Class Members for purposes of the FLSA.

88. Marathon set the Putative Class Members' schedule.

89. Marathon required the Putative Class Members to work over 40 hours in a week.

90. Marathon typically scheduled Putative Class Members to work 10 hour shifts, for as many as 5-6 days a week.

91. Marathon keeps accurate records of the hours, or at least days, of the Putative Class Members' work.

92. Marathon required the Putative Class Members to report their time.

93. Marathon required the Putative Class Members to report their expenses.

94. Marathon approved the Putative Class Members' time worked.

95. Marathon approved the Putative Class Members' expenses.

96. Separate from the day rate, the Putative Class Members were paid a per diem.

97. The per diem was not considered wages.

98. The Putative Class Members were paid other reimbursements.

99. The reimbursements were not considered wages.

100. The Putative Class Members' work was production based.

101. The Putative Class Members' work was integral to the operation of Marathon's oil and crude production and transportation.

102. The Putative Class Members were prohibited from deviating from Marathon's quality standards.

103. The Putative Class Members are blue collar workers.

104. The Putative Class Members are not exempt under any white-collar exemption.

105. The Putative Class Members were not guaranteed a salary.

106. Marathon cannot demonstrate that the Putative Class Members were paid on a salary basis in accordance with the FLSA.

107. Marathon cannot demonstrate that the Putative Class Members were not its employees for purposes of the FLSA.

**JURY DEMAND**

108. Callaway demands a trial by jury.

**RELIEF SOUGHT**

109. WHEREFORE, Callaway prays for judgment against Defendant as follows:

   a) An Order designating the case as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b) For an Order appointing Callaway and his counsel to represent the interests of the Putative Class Members;

   c) For an Order finding Marathon is liable to Callaway and the Putative Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

   d) For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

   e) For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
State Bar No. 24014780
Andrew W. Dunlap
State Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH, P.L.L.C.**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS IN CHARGE FOR PLAINTIFF**